## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIN O. JIN**<br>**8421 Fox Run**<br>**Potomac, MD 20854,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**PARSONS CORPORATION,**<br>**5875 Trinity Parkway, Suite 300**<br>**Centreville, VA 20120**<br><br>      **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No.:** _____<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      Jin O. Jin, by and through counsel, files this Civil Complaint against Parsons Corporation for discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

2.      Jin, who is 66 years old, worked at Parsons for more than 22 years and was the most senior engineer in his division.

3.      In 2016, despite his long record of consistently strong performance and repeated requests for new assignments, Parsons did not assign new work to Jin after he successfully completed work on two major projects,.

4.      In May 2016, after Jin's repeated requests for new assignments, Parsons placed him on part-time status and a Performance Improvement Plan (PIP) based on false allegations of

performance deficiencies that had not previously been documented in any way, including in Jin's prior performance evaluations.

5.     The Performance Improvement Plan lacked specific, reasonable, or measurable PIP goals, and lacked a specific timeline for evaluation and completion.

6.     Jin provided a detailed rebuttal to the false allegations of performance deficiencies in his PIP and continued to request new assignments and a return to full-time status while he continued his excellent performance in his downgraded part-time role.

7.     Jin also complained to Parsons that it had placed him on the PIP and part-time status because of his age.

8.     Over the next approximately two years, Jin repeatedly complained to Parsons regarding its age discrimination, as Parsons maintained his PIP and part-time status and made additional false allegations of performance deficiencies.

9.     Jin also complained that Parsons, as it continued its unfair treatment of him, was also retaliating against him for his prior complaints of age discrimination; and he continued to specifically rebut each new false allegation of poor performance.

10.     On June 22, 2018, Parsons terminated Jin because of his age and because of his protected activity under the ADEA.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.

2.      This Court has personal jurisdiction over Parsons because it conducts regular business in the District of Columbia and because it maintains regular and systematic contacts with the District of Columbia.

3.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391 because Parsons may be found in this district and because a substantial part of the acts or omissions that form the basis of this complaint occurred in this District.

4.      Jin filed a timely EEOC charge on July 11, 2018, with the EEOC's Washington Field Office, alleging age discrimination and retaliation based on his termination by Parsons, with the earlier acts of Parsons cited as evidence of the discriminatory and retaliatory nature of his termination.  On July 26, 2018, the EEOC issued a "Dismissal and Notice of Rights" to Jin, which he received on July 30, 2018.  Pursuant to that Dismissal and Notice of Rights, Jin had ninety days from his receipt on July 30, 2018 to initiate this action.  He has thus exhausted his administrative remedies and his filing of this action is timely.

## PARTIES

5.      Plaintiff Jin is a resident of Potomac, Maryland and a citizen of the United States. Parsons employed Jin as an engineer from September 1996 to June 22, 2018.

6.      At all times relevant to this action, Jin was an "employee" as defined in 29 U.S.C. § 630(f).

7.      Defendant Parsons is an engineering services firm. At all times relevant to this action, Parsons was an "employer" as defined in 29 U.S.C. § 630(b).

## FACTS

8.      Jin began working at Parsons in September 1996 as a principal engineer.

9.      Jin is 66 years old and was the oldest engineer in his division at Parsons.

10.     During his tenure at Parsons, prior to 2016, Parsons consistently issued Jin strong performance ratings.

11.     Jin reported to Ahmad Khashan, a supervising engineer. Khashan reported to Greg Shafer, the Southeast district bridge manager.

12.     During his more than two decades of employment with Parsons, Jin was based in Washington, D.C. and worked on numerous engineering projects.

13.     In 2015 and 2016, Jin worked on two major projects: the I-95 DAR Project and Seminary Road Project, both located in Virginia.

14.     On those projects, he was responsible for the design of bridges and other structures; he was the engineer of record and signed and sealed the final contract drawings.

15.     Jin performed his work successfully with limited supervision.

16.     Beginning in February 2016, as the Seminary Road Project neared completion, Jin began communicating with Khashan to request new assignments; Khashan did not respond to Jin's requests for new assignments.

17.     Jin continued to contact Khashan through email and then began speaking with Khashan in person, trying to get a response to his requests for new assignments.

18.     Khashan claimed that there was not enough work for Jin, and also, that the project manager of Jin's previous assignment, Josh Wade, had said not to give Jin any additional work.

19.     Wade had never communicated to Jin any dissatisfaction with Jin's work on the project.

20.     On February 19, 2016, Jin emailed Khashan and expressed his interest in being assigned to a project.

21.     Jin included district manager Greg Shafer on the email, which angered Khashan.

22.     Khashan told Jin that including Shafer on the email was "risky" but did not elaborate.

23.     Jin continued to experience challenges with Khashan throughout February 2016, and reported Khashan's unprofessional behavior to district manager Shafer.

24.     Jin also continued to request additional work and assignments from both Khashan and Shafer.

25.     Shafer refused to respond to any of Jin's attempts and never acknowledged Jin's complaints about Khashan or Jin's additional requests for assignments.

26.     On March 28, 2016, Khashan informed Jin that he was not approved to work on the I-66 Project.

27.     Jin contacted the I-66 Project Manager, Ronaldo Nicholson, Capital district manager with Parsons' highway department, to further discuss Jin's potential assignment to the I-66 project.

28.     On March 31, 2016, Jin met with Nicholson and Jin explained why he should be assigned to the I-66 Project.

29.     By the end of the meeting, Nicholson agreed to assign Jin to the project and said he would speak with Khashan on how best to allocate the work.

30.     But Jin was not assigned to the project, and no explanation was provided to him for the failure to assign him to the project.

31.     Over two months later, Nicholson wrote up minutes for the March 31, 2016 meeting and included in the minutes that Jin was not authorized to work on the I-66 project.

32.     Nicholson fabricated many portions of the meeting minutes to make it appear as though the purpose of the meeting was to reprimand Jin.

33.     In response, Jin provided a brief response to the minutes, explaining his recollection of events.

34.     Due to the lack of assignments given to Jin, beginning at the end of February 2016, Jin charged over 100 man-hours of his non-billable time to paid time off.

35.     Jin continued to communicate with Khashan regarding the unfair treatment and discrimination Jin was experiencing.

36.     On April 11, 2016, Jin emailed Khashan regarding his work allocation and specifically told him that Jin believed he was being discriminated against and singled out because of his age.

37.     Jin included Shafer and Stephanie Califano, a Parsons Human Resources representative, on this email.

38.     On May 19, 2016, Nicholson requested to meet with Jin.

39.     Jin met with Nicholson and at the end of the meeting, Nicholson handed Jin a three-page memorandum.

40.     Two pages of the memorandum were a performance improvement plan that made various false allegations regarding Jin's performance on different projects, with some of the allegations going back years.

41.     The last page of the memorandum was a copy of Nicholson's false minutes regarding the March 31, 2016 meeting.

42.     Nicholson informed Jin that his employment status would be changed to part-time and that Jin should expect to receive a letter from Human Resources confirming this status change.

43.     After the meeting, Jin emailed Nicholson, asking for the reason why he was being placed on part-time status.

44.     In this email, Jin told Nicholson that he believed he was receiving this status change because of his age.

45.     Nicholson replied to Jin's email with a forwarded response from Human Resources, which stated that anyone who charges less than 40 hours is required to be placed on part-time status.

46.     Jin again asked why he was being singled out but did not receive a response.

47.     On July 12, 2016, Jin responded to the May 19, 2016 memorandum and performance improvement plan, refuting many of the document's false accusations.

48.     Parsons repeatedly refused to respond to Jin's refutations and factual corrections.

49.     In August 2016, Jin again contacted Khashan, asking for meaningful assignments.

50.     Jin pointed out that the only work he had been given was busy work, such as shop drawings, and again said that he was being treated unfairly because of his age.

51.     In an email to Kashan dated on or around August 11, 2016, Jin wrote the following:

> Since I have completed the I-395 Seminary road project around the end of February, I haven't received any meaningful assignments from you (as my functional manager). On a few occasions, you have assigned me VAT (Virginia Avenue Tunnel) shop drawing reviews which are short assignments.  Consequently, my status has been changed to part-time due to a lack of work even though the DC structural group has significant on-going projects such as the South Capitol Bridge, I-66, and VAT. But I haven't been assigned any of the above mentioned projects except VAT shop drawings.
>
> I remain concerned that you are singling me out and treating me unfairly because of my age, and because I previously complained about this unfair treatment – and that you do not intend to assign me meaningful tasks going forward.  Please let me know if and when I can expect to receive

> meaningful assignments from you.  I remain committed to performing my
> duties with skill and dedication, and I only ask that I be treated fairly and
> be given the opportunity to do so.

52.     No one at Parsons, including Kashan, responded to Jin's August 11, 2016 email.

53.     In his two decades of employment with Parsons, prior to 2016, Jin had never received a performance improvement plan, and the memo he received on May 19, 2016 was the first time he had heard of any purported performance problems related to his work.

54.     Many of the purported performance issues related to projects that were both years old and completed successfully.

55.     On October 27, 2016, Jin's counsel wrote to Parsons, stating that Jin intended to pursue claims that Parsons violated the ADEA when it stopped assigning him work, falsely criticized his performance, and then placed him on part-time status—unless Parsons took immediate steps to address those issues.

56.     In the letter, Jim also said he would continue to perform all his duties in exemplary fashion, and that he hoped Parsons would ensure that he received fair treatment.

57.     Jin also enclosed an "Evidence Preservation Letter" directing Parsons to preserve all evidence related to his potential claims.

58.     Parsons did nothing to stop the discriminatory and retaliatory treatment against Jin.

59.     On December 7, 2016, while still employed at Parsons, Jin filed an EEOC charge based on the facts alleged above, and alleging age discrimination and retaliation in violation of the ADEA with regard to the false performance allegations, the PIP, and the diminution of Jin's duties and placement on part-time status.

60.    On December 27, 2016, Parsons, through Amir Hedayati, a senior engineer, made

new false allegations of performance deficiencies on Jin's part.

61.    On or around January 9, 2017, Jin responded in writing to Hedayati, refuting the

latest false allegations of performance deficiencies.

62.    On January 24, 2017, Jin emailed Michael Johnson, the President of Parsons'

Infrastructure Business Unit, regarding Hedayati's false allegations.

63.    In that email, Jin said, in part, the following:

> After serving Parsons for over 20 years, I am truly disheartened at how the
> Parsons family has been treating me lately. As a long-time colleague, I
> thought I would let you know so that perhaps situations like this can be
> avoided going forward.
>
> In my 20 years with Parsons, I don't recall being treated like this before and it's
> simply beyond the pale.

64.    On June 5, 2017, Jin received a memo from Amir Arab, who at that time was his

supervisor, dated April 28, 2017, regarding a meeting they had on April 19, 2017.  Stefani

Califano, Parsons' HR representative, also attended that meeting.

65.    In his memo, Arab said that during their meeting, they had a "detailed discussion"

regarding Parsons' expectations of Jin as a principal engineer.

66.    Jin responded to Arab's memo on or around June 7, 2017 responding to Arab's

allegations with the following:

> I agree that [when we met on April 19, 2017] there was some discussion
> of these expectations, and I agree that these expectations are
> appropriate.  But I also believe, as I made clear during the meeting, that I
> have consistently met these expectations.  The memo suggests – wrongly
> and without any specific supporting information – that I have somehow
> not been meeting these expectations.
>
> The memo also notes that my "performance on the projects and final
> deliverables will affect the safety of [the] public, contractors and our
> employees" and that every task "will require due diligence and utmost

attention, including shop drawing reviews." Again, I certainly agree that this is a true statement, and I am constantly guided by the knowledge that my performance impacts safety – and I exercise due diligence and utmost attention in performing my duties. The memo lacks any specific information that would support any claim to the contrary.

The memo also references "performance issues and concerns particularly related to Anacostia River Tunnel project" without specifically identifying any such "issues and concerns." It then lists certain "communication" actions for me to take to "prevent similar issues as we move forward." I am already performing those actions and will continue to do so.

The memo also notes that I am a part-time employee. For the record, the decision by Parsons to change my status to part-time was wrongful. That change in status was motivated by animus due to my age and made in connection with a Performance Improvement Plan (dated May 19, 2016) that contained untrue claims about my performance. I responded in great detail (66-pages including exhibits) to those false accusations on July 12, 2016. It is nearly one year later and I have yet to hear anything from Parsons with respect to my responses to that PIP. As was the case last year, your memo from April 28th (which for some unknown reason I received 5 weeks later) is just another example of discrimination and workplace harassment. I should hope that no further discrimination or retaliatory actions are taken on behalf of you or Parsons as a result of this email responding to the same.

The memo concludes by saying that Parsons "expect[s] immediate and sustained improvement as outlined above." But I am already performing in a way that meets all the legitimate expectations of my position, and all of the "expectations" listed in the memo. As I have repeatedly explained, no "immediate and sustained improvement" on my part is needed . . .

* * *

In conclusion, and as I stated above, I will <u>continue</u> to meet Parsons' legitimate expectations of me as a principal engineer; and I dispute that any improvement on my part is necessary. As an aside, please note that my having to respond to baseless claims of deficiencies of my performance under the cover of unspecific memos (such as yours and the PIP) is not a productive use of my time or that of Parsons's clients. I again ask that Parsons evaluate my work fairly, assign additional work to me, and restore my status as a full-time engineer.

I look forward to your prompt response to each of the above items.

67.     When he did not receive a response, Jin emailed Nicholson on or around

September 18, 2017.  In his email, Jin said the following:

> I still await information regarding the status of the PIP on which Parsons
> placed me in May 2016.  It has been well over a year since I submitted my
> response to the PIP (and I stand by, and reiterate, the contents of that
> response).
>
> Please provide an update that (1) includes the current status of the PIP –
> whether ongoing or closed – and (2) the specific reason(s) for the current
> status.  In particular, if it is ongoing, I am entitled to an explanation of
> why it continues; conversely, if it has been closed, I am entitled to an
> explanation of how and why it was closed and any determinations made
> by Parsons in closing it.
>
> On a closely related matter, I remain on indefinite part-time status, which
> continues to severely impact my work and my income and my ability fully
> to contribute to Parsons.  For all of the reasons I provided in my July 12,
> 2016 response to the PIP, and based on my continued good performance, I
> request that Parsons officially end the PIP (if it remains open) and
> reinstate me to full-time status.
>
> I look forward to your prompt response.

68.     Nicholson responded that "it's a good time to sit down and review your

performance plan and next steps" and Parsons would "be doing so in the next couple of weeks."

69.     On or around October 18, 2017, Arab told Jin that Parsons was going to return Jin

to full-time status and that Nicholson would talk to Jin and make that "official."

70.     In early November 2017, Jin learned that Parsons' structural department in the

Washington, D.C. office had hired two engineers who were approximately 30 years in age; this

made a total of four engineers significantly younger than Jin who had been hired by Parsons

since Parsons put Jin on the unwarranted PIP.

71.     Parsons has not terminated any of these younger engineers.

72.     Jin met with Nicholson and Califano on January 5, 2018.

73.     Despite what Jin had been told by Arab in October 2017— that his employment status would be restored to full-time—Jin learned during this January 5, 2018 meeting that his status would remain part-time.

74.     During this meeting, Nicholson also raised a new false allegation of poor work performance on Jin's part.

75.     On January 19, 2018, Jin sent an email to Nicholson, copying Califano, regarding the meeting on January 5, 2018.

76.     In his email of January 19, 2018, Jin noted his disappointment that Parsons had used the January 5, 2018 "to make more unsubstantiated claims about [Jin's] work performance and continue Parsons' discrimination against [him]," rather than "address restoration of [Jin's] employment status to full-time or, at the very least, address [his] responses to the PIP that [he] submitted over a year ago."

77.     Jin, in his email, went on to specifically rebut the latest false allegations regarding his performance.

78.     Jin also said, "I believe that Parsons is, once again, making unfounded accusations about my performance to continue the age-based discrimination against me and justify its refusal to restore me to full-time status."

79.     Jin concluded his January 19, 2018 memo as follows:

> Instead of addressing my detailed PIP responses, Parsons has again chosen to make baseless claims about my performance.  My time could be better spent in performing billable work for Parsons, rather than being required to go through these recurring efforts to defend my work product every few months. This pattern of discriminatory and retaliatory behavior must stop. I repeat my prior requests to be treated fairly

80.     Nicholson responded with a memo dated January 28, 2018, in which he attempted to justify Parsons' actions regarding Jin's employment.

81.     On February 1, 2018, Jin responded in an email to Nicholson, reiterating Jin's email of January 19, 2018.

82.     Jin met with Nicholson on February 5, 2018.

83.     During the meeting, Nicholson told Jin that he was "doing fine" and that they should meet on a regular basis, but Nicholson did not provide Jin with any specific, reasonable, or measurable PIP goals, nor a specific timeline for the PIP, as Jin had repeatedly requested.

84.     On March 13, 2018, Jin again met with Nicholson; Nicholson requested the meeting because Hedayati had made additional false allegations regarding Jin's work performance.

85.     On March 20, 2018, Jin sent Nicholson an email to document their meeting of March 13, 2018.

86.     In his email of March 20, 2018, Jin specifically refuted the latest false performance allegations and again requested fair treatment and restoration to full-time status.

87.     On June 22, 2018, Parsons fired Jin, falsely claiming that his performance "continued" to be "substandard;" Jin was not provided with any specific information regarding the purported "substandard" performance.

88.     In firing Jin on June 22, 2018, Parsons discriminated against him because of his age and retaliated against him for having previously complained of the age discrimination he had experienced leading up to his termination.

89.     Jin filed a timely EEOC charge on July 11, 2018, with the EEOC's Washington Field Office, alleging age discrimination and retaliation based on his termination by Parsons, with the earlier acts of Parsons cited as evidence of the discriminatory and retaliatory nature of his termination.

90.     On July 26, 2018, the EEOC issued a "Dismissal and Notice of Rights" to Jin, which he received on July 30, 2018.

91.     Pursuant to that Dismissal and Notice of Rights, Jin had ninety days from his receipt on July 30, 2018 to initiate this action.  He has thus exhausted his administrative remedies and his filing of this action is timely.

92.     All of the actions that were the subject of Jin's earlier December 7, 2016 EEOC Charge remain relevant as evidence of the discriminatory and retaliatory animus that motivated Parsons to fire him on June 22, 2018.

## COUNT I
### Discrimination in Violation of the ADEA, 29 U.S.C. § 621, *et seq.*

93.     Jin hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

94.     Jin is an employee and Parsons is an employer as defined by the ADEA.

95.     Jin is over forty years old and within the class protected by the ADEA.

96.     Jin's performance at the time of his termination met Parsons' legitimate expectations.

97.     Parsons treated younger, similarly situated engineers more favorably than Jin.

98.     Parsons had no legitimate business reason for firing Jin.

99.     Parsons' stated reasons for terminating Jin are pretextual.

100.     Jin has exhausted his administrative remedies.

101.     Jin has sustained damages as the result of Jin's illegal discrimination in violation of the ADEA, including, but not limited to, economic damages, damage to his career, and emotional, mental, and physical distress.

## COUNT II
### Discrimination in Violation of the ADEA, 29 U.S.C. § 621, *et seq.*

102.    Jin hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

103.    Jin is an employee and Parsons is an employer as defined by the ADEA.

104.    Jin is over forty years old and within the class protected by the ADEA.

105.    Jin's performance at the time of his termination met Parsons' legitimate expectations.

106.    Jin repeatedly engaged in protected activity under the ADEA by complaining that he was being discriminated against by Parsons because of his age.

107.    Parsons terminated Jin, in part, because he engaged in protected activity under the ADEA.

108.    Parsons had no legitimate business reason for firing Jin.

109.    Parsons' stated reasons for terminating Jin are pretextual.

110.    Jin has sustained damages as the result of Jin's illegal retaliation in violation of the ADEA, including, but not limited to, economic damages, damage to his career, and emotional, mental, and physical distress

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jin O. Jin respectfully requests that the Court enter judgment in his favor and award him the following relief:

a)   Economic damages;

b)   Liquidated damages;

c)   Compensatory damages;

d)   Punitive damages;

e)   Legal fees; and

f)   Any other relief that this Court deems just and equitable.

### **JURY DEMAND**

Plaintiff  Jin. O. Jin demands a trial by jury for any and all issues proper to be so tried**.**


Respectfully submitted,


_____/s/ John T. Harrington_____
R. Scott Oswald
DC BAR# 458859
John T. Harrington
DC Bar # 987659
The Employment Law Group, P.C.
888 17th Street, N.W., 9th floor
Washington, D.C. 20006
(202) 261-2838
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com
*Counsel for Plaintiff*