**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JIN O. JIN,<br><br>        Plaintiff,<br><br>v.<br><br>PARSONS CORPORATION,<br><br>        Defendant. | Case No. 1:18-cv-02222 (TNM) |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Defendant Parsons Corporation ("Parsons") submits this Reply Memorandum in support of its Motion to Stay Proceedings and Compel Arbitration of Plaintiff Jin O. Jin's claims that he was discriminated and retaliated against in violation of the Age Discrimination in Employment Act.

**I.   Introduction**

In his Opposition (ECF No. 11, hereinafter "Pl.'s Opp."), Jin concedes that if the parties have entered into the Agreement to Arbitrate, it both covers his claims and allows him to vindicate effectively his statutory rights. (Pl. Opp. at p. 1, n.1). The gist of Jin's Opposition is simply that because he does not remember receiving several emails notifying him of changes to Parsons' Employee Dispute Resolution ("EDR") Program in 2012, including the Agreement to Arbitrate, he could not have agreed to be bound by it. But in the face of competent and inarguable evidence to the contrary, Jin cannot avoid arbitration by not recalling a series of emails sent to him over six years ago. Nor can Jin simply bury his head in the sand rather than heed the terms and conditions of his employment.[1] Because Jin's Opposition creates no genuine dispute of material fact on whether the

---

[1] Were Jin's arguments controlling, anyone could defeat enforcement of a contract by simply

parties formed a valid contract in the Agreement to Arbitrate, and because there is no dispute that the Agreement covers the claims here, Parsons requests that the Court grant the Motion to Compel arbitration.

## II. Jin Fails to Create a Disputed Issue of Material Fact Sufficient to Defeat Parsons' Motion to Compel Arbitration.

Jin mainly opposes Parsons' motion because he claims to not recall receiving several emails informing him of changes to the EDR Program in the fall of 2012, including the Agreement to Arbitrate. But Parsons' undisputed business records and sworn declaration demonstrate conclusively that Jin received notice of the EDR Program and was specifically informed that if he continued his employment with Parsons it would apply to him. In its opening Brief and exhibits, Parsons demonstrated that it has maintained an Employee Dispute Resolution Program ("EDR Program") requiring arbitration of most employment disputes since 1998. It also showed that Jin received several emails in the fall of 2012 advising him of updates and enhancements to the EDR Program, including a new Agreement to Arbitrate. Parsons provided a copy of the initial email sent to all employees (ECF No. 9-2, Ex. A). It also provided an internal tracking document that showed the original email and three others were sent to Jin. (*Id.* at Ex. D). Finally, it provided a copy of the November 2012 email sent to Jin. (*Id.* at Ex. E). These emails to Jin all informed him that the EDR Program, including the Agreement to Arbitrate, applied, with limited exceptions, to all employees of Parsons' U.S. companies. (*Id.*). It also informed him that his continued employment would constitute acceptance of the Agreement to Arbitrate whether or not he completed the certification of

---

claiming ignorance of the terms they were offered and accepted, leaving the offering party completely unable to rely on the other's conduct. Thankfully, the law does not support such a defense to contracts.

that document. Jin then continued to work for Parsons for several more years. As a result, a valid Agreement to Arbitrate was formed between the parties.

In response to this credible declaration and documentary evidence submitted by Parsons, Jin only purports to be unaware. He claims to "have no recollection" of Parsons implementing its EDR Program in 1998. (Declaration of Jin. O Jin. (ECF No. 11-1, hereinafter "Jin Decl.") ¶ 2). Likewise, he asserts that he does "not recall" receiving email notifications from Parsons about the 2012 updates to the EDR Program. (*Id.* at ¶¶ 3-4). As a result, despite having worked for Parsons for almost twenty years as an employee covered by a Parsons' EDR Program, Jin claims to have been unaware of his need to arbitrate his claims.

### 1. Jin's Mere Denial of Receipt Cannot Defeat the Mailbox Rule.

Because Jin seeks to avoid arbitration based on his alleged non-receipt of the Agreement to Arbitrate, he bears the burden of proving the Agreement should be invalidated for that reason. *See Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 40 (D.D.C. 2008) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000)) ("party resisting arbitration has initial burden of proof regarding issue of unenforceability of arbitration agreement."). Jin's forgetfulness does not invalidate the Agreement to Arbitrate.

First, state and federal courts in the District of Columbia recognize the common-law "mailbox rule." Under that rule, there is a presumption that a properly addressed letter "was delivered in a timely fashion to its intended recipient." *Bradshaw v. Vilsack*, 102 F. Supp. 3d 327, 331 n.5 (D.D.C. 2015) (quoting *Duckworth v. U.S. ex rel. Locke*, 705 F. Supp. 2d 30, 42 (D.D.C. 2010)). Courts have applied this presumption in the email context. *See Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-CV-7865 (RA), 2018 U.S. Dist. LEXIS 90988, at *9 (S.D.N.Y. May 31, 2018) (citing *Clearfield v. HLC Am. Inc.*, No, 17-CV-1933 (JMF), 2017 U.S. Dist. LEXIS

92362, 2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017)).  Given the strong evidence of transmission to Jin provided by Parsons – and nothing more than forgetfulness by Jin – this Court likewise should apply the mailbox rule presumption to the emails at issue.  *See Abdullah v. Am. Express Co.*, No. 3:12-cv-1037, 2012 U.S. Dist. LEXIS 184592, at *4-5 (M.D. Fla. Dec. 19, 2012) (finding that the presumption of delivery applicable to mail also applies to emails, and holding that the plaintiff's denial of receipt of an email containing notice of an arbitration agreement could not rebut the presumption that he had received the email).

While some courts have held that the presumption of receipt may be rebutted by sworn testimony such as Jin's declaration, the weight of authority is that "a mere denial of receipt is insufficient to rebut the presumption accorded the sender under the mailbox rule."  *See Lepre v. Dep't of Labor*, 275 F.3d 59, 70 (D.C. Cir. 2001) (citations omitted).  To the contrary, an intended recipient can only rebut the presumption of receipt through actual, credible evidence of non-receipt, which requires more than a mere denial.  *See Schikore v. BankAmerica Sup. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (explaining that the mailbox rule is intended to avoid "swearing contests" between parties on the question of receipt); *see also Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) (enforcing employment arbitration agreement that the plaintiff claimed to have not received); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) (finding a plaintiff's testimony that she could not remember seeing the arbitration email insufficient to create an issue of fact when the defendant offered evidence that the notice was sent and presumably received).  Of course, here, Jin doesn't deny receipt – he merely doesn't recall, just like the plaintiff in *Tinder* whose testimony was insufficient to defeat the presumption of receipt.

In *Lockette v. Morgan Stanley*, No. 18-cv-876 (JGK), 2018 U.S. Dist. LEXIS 171156 (S.D.N.Y. Oct. 3, 2018), likewise, the Southern District of New York recently issued an opinion

4

compelling arbitration. That court determined that "a plaintiff's mere denial of receipt of an email is insufficient" to warrant denying a motion to compel arbitration. *Id.* at *10. In *Lockette*, as here, the defendant notified employees of its arbitration program through an email to each employee's work email account. *Id.* at *4. And, similar to Jin, the plaintiff in that case claimed that he "neither received nor saw the email" announcing the arbitration policy and thus there was not a valid agreement to arbitrate. *Id.* at *6. In rejecting the plaintiff's argument, the *Lockette* court noted that the defendant in that case, like Parsons, had providing supporting documentation showing that the email had been sent to the plaintiff's work email address. The court thus directed the parties to arbitration. This Court should follow the reasoning of *Lockette* and compel the parties to arbitration.

Jin also appears to argue that he never read the Agreement to Arbitrate, and thus should not be bound by it. His choice not to read it, however, does not relieve him from complying with its terms. *See Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 101 (D.D.C. 2004) ("Failing to read or understand an arbitration agreement, or an employer's failure to explain it, simply will not constitute 'special circumstances' warranting relieving an employee from compliance with the terms of an arbitration agreement"); *see also Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 81-82 (D.D.C. 2003) (granting motion to compel arbitration even though it was undisputed that the plaintiff had never seen a full version of the applicable dispute resolution policy).

In sum, Jin's alleged failure to recall his receipt of emails that provided him with the Agreement to Arbitrate, and his apparent decision not to read the Agreement or the accompanying materials that explained the EDR Program do not relieve him of the requirement to be bound by them. As a result, Parsons' motion should be granted.

### 2. Jin's Continued Employment Demonstrates His Intent to be Bound by the Agreement to Arbitrate.

In his Opposition, Jin relies on a few distinguishable cases in which the District of Columbia Circuit and this Court have denied motions to compel arbitration. Jin even goes so far as to characterize these cases as "controlling precedents." (Pl. Opp. at p. 8). They are not. First, two of the three cases that Jin relies on cannot be legally controlling precedent. The District of Columbia Circuit's decision in *George Town Club at Suter's Tavern v. Salamanca*, 2008 U.S, App. LEXIS 5758 (D.C. Cir. Mar. 10, 2008) was unpublished, and so it is not binding precedent. *See In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011). Even more so, this district's opinion in *Camara v. Mastro's Rests. LLC*, No. 18-724 (JEB), 2018 U.S. Dist. LEXIS 182206 (D.D.C. Oct. 24, 2018), cannot be controlling precedent because it is an unpublished district court opinion. *See Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 59 (D.D.C. 2001) (prior district court opinions "are not binding upon this court and do not establish 'the law of the district.'"). While Jin is free to argue that these decisions are persuasive, his assertion that they are controlling is a step too far.

Next, while the District of Columbia Circuit's opinion in *Bailey v. Fannie Mae*, 209 F.3d 740 (D.C. Cir. 2000) *could* be controlling precedent, it is a fact-specific opinion that should not bind this Court to find that *these* particular parties, under the circumstances of *this* case, did not enter into the Agreement to Arbitrate. Unlike here, the plaintiff in *Bailey* had, in fact, affirmatively rejected the new arbitration policy, as the district court found. Unlike here, the plaintiff in *Bailey* had already begun his formal complaint procedures before the arbitration policy was in effect, specifically asserting he retained the option to proceed in court. And unlike here, the plaintiff in *Bailey* had his attorney correspond with defendant's representatives to make it clear that the plaintiff did not consider himself to be bound to pursue his claims in arbitration. Plainly, significant evidence existed

in *Bailey* that there was not a meeting of the minds. Moreover, the Agreement to Arbitrate here provides for the arbitrator to be able to award "all relief available and appropriate in law or in equity," (ECF No. 9-2, Ex. C, ¶ 7). Thus, the Circuit's concern that an employee could waive statutory remedies through entering into an arbitration agreement is inapplicable.

The Circuit's opinion in *Salamanca* is also readily distinguishable. That decision was largely based on the employer's manifestation of an intent to not be bound by its employee manual, which included arbitration provisions. Taking into account that the employer's acknowledgment form for that manual specifically provided that it was not a binding contract, the Circuit Court affirmed the lower court's finding that there was no "meeting of the minds" because the employer lacked an intent to be bound. Here, in contrast, the Agreement to Arbitrate expressly "binds both Employee and the Company to arbitrate any and all disputes arising out of or relating to Employee's employment, in lieu of litigating those disputes in court." (*Id.* at ¶ 1).

Nor is *Camara* persuasive authority. In that case, the employer asserted that because it usually offered the arbitration agreement to its employees that it must have done so there. Even so, it could not offer any evidence of any specific communication between the employer and the plaintiff about the agreement. *See Camara*, 2018 U.S. Dist. LEXIS 182206, at *11-12. Here, on the other hand, Parsons has offered evidence of direct, specific communications with Jin about the EDR Program and the Agreement to Arbitrate. That removes this case from *Camara's* "he said, she said" "prototypical dispute of fact" and places it squarely within the scope of the mailbox rule. As described above, competent evidence shows that Jin actually received the Agreement to Arbitrate, and his continued employment demonstrated his assent to be bound.

Jin argues that the substantive factual distinctions between this case and those to which he cites are "minor." (Pl. Opp. at p. 9). But in the context of a motion to compel arbitration the factual

details matter. That is especially the case given that District of Columbia law recognizes that the parties' intent to form a contract can be inferred based on their conduct. *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. App. 1995). Moreover, this court has recognized that "continued employment" may manifest assent to an arbitration agreement because "[c]onditioning employment upon acceptance of the Arbitration Policy is legal and valid so long as defendant does not require employees to pay all or part of the arbitrator's fees, and defendant does not." *Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 44 (D.D.C. 2008) (citing *Cole v. Burns Int'l Sec. Servs.*, 323 U.S. App. D.C. 133, 105 F.3d 1465, 1483-84 (D.C. Cir. 1997). Given the clear statement from Parsons that Jin's continued employment would manifest his assent to be bound by the EDR Program going forward, the Court should validate that assent by directing the parties to arbitration. *See*, *e.g.*, Caley *v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374-75 (11th Cir. 2005) ("act of continued employment constituted acceptance" of arbitration policy where the policy stated that no signature would be required for it to apply).

Finally, Jin argues that his filing of two charges with the Equal Employment Opportunity Commission ("EEOC"), including one while employed by Parsons, were affirmative actions demonstrating his intent not to be bound by the Agreement to Arbitrate. (Pl. Opp. at p. 9). This argument is a red herring. It ignores the clear language of the Agreement to Arbitrate, which provides that claims filed with a federal, state, or local administrative agency, such as the EEOC, are expressly excluded from the scope of the Agreement. (ECF No. 9-2, Ex. C, ¶ 1). As a result, whatever actions Jin may have taken as part of any EEOC filings are irrelevant to whether he agreed to arbitrate this dispute rather than to litigate it in federal court.

**I.   Conclusion**

For the reasons set forth above and in its initial Memorandum, Parsons requests that the Court stay this matter and enter an order compelling arbitration of Jin's statutory claims.

Respectfully submitted,

Dated: January 7, 2019  /s/ Joseph E. Schuler
Joseph E. Schuler (DC Bar No. 296269)
**Jackson Lewis P.C.**
10701 Parkridge Boulevard, Suite 300
Reston, VA  20191
(703) 483-8300 – Phone
(703) 483-8301 – Fax
SchulerJ@jacksonlewis.com
*Counsel for Defendant Parsons Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 7, 2019, a true and accurate copy of the foregoing *Defendant's Reply Memorandum in Support of Motion to Stay Proceedings and Compel Arbitration* was served via the Court's ECF system upon the following counsel of record:

> John T. Harrington, Esq.
> R. Scott Oswald, Esq.
> The Employment Law Group
> 888 17th Street, N.W.
> 9th Floor
> Washington, D.C.  20006

/s/Joseph E. Schuler